******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia,
breach of contract in connection with certain operational decisions the
defendants made pursuant to a limited liability operating agreement
with regard to the ownership and operation C Co., of which the plaintiff
had been a member. The managers of C Co. created a $3 million capital
reserve. Thereafter, the defendants, who controlled 61 percent of the
interests of C Co., voted to amend a section of the agreement that
effected how distributions are to be made. This was done over the
objections of the plaintiff, who also challenged the necessity of the
capital reserve. The defendants subsequently voted to remove the plain-
tiff as a member of C Co. The plaintiff then commenced the present
action, alleging three counts of breach of contract and two counts of
breach of fiduciary duty, arising out of the amendment of the company
agreement, the removal of the plaintiff as a member, and the capital
reserve. The jury returned a verdict in favor of the plaintiff on his breach
of contract claims and did not reach the breach of fiduciary duty claims.
The defendants thereafter filed motions to set aside the verdict and for
judgment notwithstanding the verdict, which the trial court denied and
thereafter rendered judgment in favor of the plaintiff. Subsequently, the
court granted the plaintiff's motion for attorney's fees and costs. On
the separate appeals brought to this court by the defendants, *held*:

1. The trial court erred in denying the defendants' posttrial motions as to
the breach of contract claims regarding the amendment to the agreement
and the removal of the plaintiff as a member of C Co.; the court misinter-
preted the company agreement because the defendants could not have
breached § 3.4 of the agreement in amending that agreement and in
removing the plaintiff as a member because § 3.4 applied to managers,
and they were acting in their capacity as members, not managers, in
undertaking those actions.

2. Although the trial court improperly instructed the jury that the defendants
owed a duty to act in good faith and without wilful misconduct or
gross negligence, this court determined that any error was harmless;
the defendants did have a duty to exercise their best judgment in con-
ducting the company's operations and performing their duties and, if
the jury found that the defendants breached the agreement because
they acted in bad faith or their actions constituted gross negligence or
wilful misconduct, then those actions would certainly not have been in
their best judgment in conducting the company's operations.

3. The defendants could not prevail on their claim that the trial court improp-
erly awarded attorney's fees and costs to the plaintiff pursuant to the
agreement, which provided for such relief to a party damaged by a
breach of the agreement: an award of attorney's fees and costs was
proper as this court affirmed the judgment in favor of the plaintiff on
the breach of contract claim related to the capital reserve, but, in light
of the results obtained by the plaintiff following this appeal, the reversal
of the judgment with respect to two of the breach of contract counts,
the judgment with respect to the award of attorney's fees and costs was
reversed and the matter the remanded for a new hearing on attorney's
fees and costs.

Argued February 10—officially released September 22, 2020

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the

court, *Robaina, J.*, rendered summary judgment for the plaintiff on the defendants' counterclaim; thereafter, the matter was tried to the jury before *Shapiro, J.*; verdict for the plaintiff, and the defendants appealed to this court; subsequently, the court, *Shapiro, J.*, denied the defendants' motions to set aside the verdict and for judgment notwithstanding the verdict and rendered judgment in accordance with the verdict, from which the defendants filed an amended appeal; thereafter, the court, *Hon. Robert. B. Shapiro*, judge trial referee, granted the plaintiff's motion for attorney's fees and costs, and the defendants filed a second amended appeal and a separate appeal to this court, which consolidated the appeals. *Reversed in part*; *further proceedings*.

*Barbara M. Schellenberg*, with whom was *Garrett S. Flynn*, for the appellants (defendants).

*Glenn W. Dowd*, with whom was *Howard Fetner*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this breach of contract and fiduciary duty case, the defendants, Michael E. Aspinwall, Steven F. Piaker, and David W. Young, appeal from the judgment of the trial court, rendered after a trial to the jury, in favor of the plaintiff, John B. Clinton. The parties' dispute arises out of their ownership and operation of CCP Equity Partners, LLC (CCP). The defendants' principal claim on appeal is that the court erred in its construction of the operating agreement that governed CCP, resulting in multiple erroneous rulings throughout the course of the litigation. The defendants specifically claim that the court improperly (1) denied their motion to strike, (2) denied their motion for summary judgment, (3) denied their motion in limine, (4) charged the jury, (5) denied their motion for judgment notwithstanding the verdict and motion to set aside the verdict (post-trial motions), and (6) awarded the plaintiff attorney's fees and costs. We agree that the court improperly construed portions of the agreement and reverse the judgment in part and affirm it in part, and remand the case for a new hearing on the issue of attorney's fees and costs.[1]

The parties, Gerard Vecchio, and Preston Kavanagh organized CCP in accordance with the Delaware Limited Liability Company Act (act), Del. Code Ann. tit. 6, § 18-101 et seq. (2005 & Supp. 2012). CCP was to operate pursuant to an amended and restated limited liability company operating agreement (agreement) that was executed by the members on December 29, 2003. CCP was founded to provide management services to, and serve as the general partner of, certain private equity funds. Pursuant to the agreement, each member was to serve as a manager and on the board of managers (board).[2] CCP, therefore, was manager-managed. See Del. Code Ann. tit. 6, § 18-402 (2005) ("Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members . . . ."). The plaintiff was the managing partner[3] of CCP from its formation in 2003 until March 11, 2008.

On June 30, 2004, Vecchio left CCP. On August 11, 2005, the managers of CCP created a capital reserve of $3 million.[4] CCP managed two private equity funds. In 2006, the members decided not to raise investor capital to create another private equity fund. The members expected all CCP operations to close and that substantially all portfolio companies would be liquidated by the end of 2012. On March 11, 2008, the defendants, who controlled 61 percent of the interests of CCP, voted to amend § 8.1 of the agreement, over the objections of the plaintiff and Kavanagh. Before the amendment, § 8.1 provided that general distributions shall be made pro rata among the members, in proportion to their capital accounts. The amendment added language to the

section, providing that distributions could otherwise be determined by the consent of all members.[5] The defendants made this amendment pursuant to § 2.5 of the agreement.[6]

On September 8, 2008, Kavanagh commenced a lawsuit against CCP and the remaining members of the company. At a meeting of the members on October 31, 2008, the defendants voted to remove Kavanagh as a member of the company. Also at that meeting, the plaintiff challenged the necessity of CCP's $3 million capital reserve. The defendants explained that the reserve was necessary to meet CCP's obligations to investors for several more years, to defend against Kavanagh's lawsuit, and for the possibility that the plaintiff may take legal action against CCP.

On February 20, 2013, the defendants voted to remove the plaintiff as a member of CCP, also pursuant to § 2.5 of the agreement.[7] The plaintiff does not dispute that he was removed as a member by the consent of members holding 60 percent or more of the percentage interests.

The plaintiff commenced the present action against the defendants on June 13, 2013. His third amended complaint, filed on October 15, 2014, is the operative complaint. In this complaint, the plaintiff alleged that the defendants breached their contractual and fiduciary duties in three specific ways, by (1) amending the operating agreement in 2008,[8] (2) removing the plaintiff as a member of CCP, and (3) maintaining a capital reserve of $3 million.[9] The plaintiff alleged that by virtue of their acts, the defendants breached the fiduciary duties they owed him under Connecticut law and, alternatively, the fiduciary duties they owed him under Delaware law. The plaintiff also alleged that, by virtue of their acts, the defendants breached § 3.4 of the agreement[10] because they "did not exercise their best judgment; did not act in good faith; did not act in a manner they reasonably believed to be in, or not opposed to, the best interests of the Company; committed gross negligence or wilful misconduct . . . ."

On December 15, 2014, the defendants moved to strike the entire complaint, arguing in part that they did not breach the agreement by (1) amending it in 2008 and (2) removing the plaintiff as a member, because they took both actions as members pursuant to § 2.5, and § 3.4 only governs the acts of managers. The court denied the defendants' motion to strike because the plaintiff pleaded facts sufficient to state a claim for breach of contract.[11] The defendants also filed a motion for summary judgment on December 21, 2016, which the court denied on July 21, 2017.

On February 14, 2018, the defendants filed a motion in limine, seeking to preclude the plaintiff from introducing parole evidence at trial to vary the meaning of the unambiguous contract language in §§ 3.4 and 8.1 and

also from introducing evidence or making arguments based on such provisions. The defendants submitted that the court was "obligated to perform an independent pretrial analysis of the [agreement's] plain meaning and not to compound the effect of rulings, reached in settings deferential to the plaintiff that cannot yet be appealed, that are contrary to the law cited herein." The defendants requested that the court rule, as a matter of law, that the second sentence of § 3.4 cannot form a basis of a breach of contract. The motion in limine was heard by the court on March 6, 2018. The court ruled on the motion in limine on March 8, 2018, and stated in part: "The defendants' arguments regarding [§§] 3.4 and 8.1 as amended of the LLC agreement at issue were previously the subject of other decisions in this case by other judges. The motion in limine, in essence, seeks reargument as to certain aspects of those decisions. . . . The court declines to categorically exclude the general subject matter alluded to in the defendants' motion. What evidence is admitted at trial remains to be determined. The motion is denied."

The plaintiff's case was tried to the jury over the course of ten days. The jury verdict form[12] first asked the jury to decide the three breach of contract counts. Only if the jury found in favor of the defendants on those counts, was it then asked to address the two breach of fiduciary duty counts, related to the member removal and the capital reserve.[13] On March 28, 2018, the jury returned its verdict in favor of the plaintiff on the three breach of contract counts. The jury, therefore, did not reach the two breach of fiduciary duty counts. The jury awarded the plaintiff $146,901 for the breach of contract related to the 2008 amendment, $672,208 for the breach of contract related to the member removal, and $303,426 for the breach of contract related to the capital reserve.

On April 9, 2018, the defendants filed both a motion for judgment notwithstanding the verdict and a motion to set aside the verdict, which were denied by the court. On July 11, 2018, the plaintiff filed a motion for attorney's fees and costs, pursuant to § 15.7 of the agreement.[14] Following an evidentiary hearing on the motion, the court issued a memorandum of decision, in which it awarded the plaintiff $716,200 for attorney's fees and $6118.75 for costs.

These consolidated appeals followed.

I

On appeal, the defendants claim that the court misconstrued the agreement and, therefore, erred when it denied their motion to strike, motion for summary judgment, motion in limine, and posttrial motions, and when it instructed the jury. Specifically, the defendants claim that the trial court "erroneously construed the second sentence of [§] 3.4 as imposing affirmative con-

tractual duties, rather than as an exculpatory clause that creates potential immunity." We agree, pursuant to our plenary review, that the trial court misconstrued the agreement and, therefore, erred in denying the defendants' posttrial motions with respect to the breach of contract counts related to the amendment and member removal, and erred in instructing the jury on the breach of contract count related to the capital reserve.

We begin by setting forth the provisions of the agreement, which, we conclude, the trial court erred in interpreting. Section 2.5 of the agreement provides: "In addition to the other matters specified hereunder, subject to the prior approval by the Board of Managers, the consent of *Members* holding 60% or more of the Percentage Interests shall be required for: (i) the admission of a new Member, (ii) *the removal of a Member other than on account of death or voluntary resignation*, (iii) the determination that a Member is disabled, (iv) the Sale of the Company, (v) the dissolution of the Company, (vi) any change in the Subscription or Percentage Interest of any Member, and (vii) *any amendment to this Agreement*." (Emphasis added.)

Section 3.4 of the agreement states in relevant part: "The *Managers* shall exercise their best judgment in conducting the Company's operations and in performing their other duties hereunder. The *Managers* shall not incur any liability to the Company, any Member or any other Person for any loss suffered by the Company or such other Member or Person which arises out of any action or omission of the Managers . . . pro‑vided, however that (i) the Managers . . . acted in good faith and in a manner such Person reasonably believed to be in, or not opposed to, the best interests of the Company and, with respect to any criminal action or proceeding, had no reasonable cause to believe such Person's conduct was unlawful, and (ii) such course of conduct did not constitute gross negligence or willful misconduct of the Managers . . . . The Managers . . . shall be fully protected and justified with respect to any action or omission taken or suffered by any of them in good faith if such action or omission is taken or suffered in reliance upon and in accordance with the opinion or advice as to matters of law of legal counsel, or as to matters of accounting of accountants, selected by any of them with reasonable care. In addition, the Managers . . . shall be entitled to indemnification by the Company to the extent provided in Article XIV hereof." (Emphasis added.)

The following standard of review and substantive law[15] govern our interpretation of these provisions. "The standard of review for the interpretation of a contract is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact [subject to the clearly erroneous standard of review] . . . [when] there is definitive

contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Alpha Beta Capital Partners*, *L.P.* v. *Pursuit Investment Management*, *LLC*, 193 Conn. App. 381, 403, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020).

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." (Internal quotation marks omitted.) *Connelly* v. *State Farm Mutual Automobile Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016). "To determine what contractual parties intended, Delaware courts start with the text. When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions, without resort to extrinsic evidence. To aid in the interpretation of the text's meaning, Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term mere surplusage. But general terms of the contract must yield to more specific terms.

"If, after applying these canons of contract interpretation, the contract is nonetheless reasonably susceptible [to] two or more interpretations or may have two or more different meanings, then the contract is ambiguous and courts must resort to extrinsic evidence to determine the parties' contractual intent." (Footnotes omitted; internal quotation marks omitted.) *Sunline Commercial Carriers*, *Inc.* v. *CITGO Petroleum Corp.*, 206 A.3d 836, 846–47 (Del. 2019).

We now address the trial court's interpretation of these provisions in ruling on the posttrial motions and in instructing the jury.

### A

### Amendment and Member Removal[16]

We first conclude that the trial court's improper construction of the agreement caused it to err in denying the defendants' posttrial motions with respect to the breach of contract counts pertaining to the amendment and member removal.

"[D]irected verdicts are disfavored because [l]itigants have a constitutional right to have factual issues resolved by the jury. . . . Therefore, [o]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable

to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Citation omitted; internal quotation marks omitted.) *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 70–71, 214 A.3d 345 (2019). It is well settled that the proper construction of an unambiguous contract involves a question of law over which our review is plenary. *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, supra, 193 Conn. App. 403.

The following additional facts are relevant. On April 9, 2018, the defendants filed a motion for judgment notwithstanding the verdict and a motion to set aside the verdict. In those posttrial motions, the defendants argued, among other things, that (1) there was no contractual qualification that limited their ability to amend the agreement in the present case, specifically under §§ 2.1, 2.5, 5.2, and 15.6 of the agreement, and (2) apart from the requisite percentages to remove a member under the agreement, which were met in the present case, nothing in § 2.5 limited their ability to remove another member. On July 2, 2018, the court denied the defendants' posttrial motions and reasoned that, on the basis of the evidence, the jury reasonably could have found that the defendants breached § 3.4 of the agreement by amending the agreement and removing the plaintiff as a member.

Because the court's ruling on the defendants' posttrial motions involved contractual interpretation of the agreement, our review is plenary. Upon careful review of the agreement at hand, we determine that, as a matter of law, the defendants could not have breached § 3.4 of the agreement by exercising their rights under § 2.5 as members—to amend the agreement in 2008 and to remove the plaintiff as a member—because § 3.4 governed the acts of managers, not members. Accordingly, we conclude that the court erred in denying the defendants' posttrial motions by misinterpreting the agreement.

Pursuant to § 2.5, the defendants amended the operating agreement in 2008 and removed the plaintiff as a member of the company in 2013. Section 2.5, titled "Actions Requiring Member Approval," is located under article II of the agreement, "MEMBERS & INTERESTS." In reading the agreement as a whole and giving meaning to each term, we determine that the contract is unambiguous and, therefore, do not consider extrinsic evidence of the parties' intent.[17]  We conclude that the plain language of § 2.5 requires the consent of members holding 60 percent or more of the percentage interests for the actions enumerated in § 2.5 to be taken. The

language "[i]n addition to the other matters specified hereunder, subject to the prior approval by the Board of Managers," is not an additional requirement for board approval, despite the parties' assertions to that effect on appeal. Instead, we conclude that the language references other provisions in the agreement that specifically require board approval, in addition to the member approval required by § 2.5.

Our construction is supported by the fact that other provisions of the agreement specify what actions taken under § 2.5 also require board approval to take effect. Section 5.5, titled "Admission of Additional Members," provides that "subject to Section 2.5, *the Board of Managers may* admit to the Company one or more additional Persons as Members. . . ."[18] (Emphasis added.) Section 10.4, titled "Obligations in a Company Sale," states in relevant part: "If the Board of Managers and the Members in accordance with Section 2.5 authorize the Sale of the Company, the Board of Managers shall give written notice describing the terms and conditions of such proposed sale to all the Members . . . ."

By contrast, certain actions provided for by § 2.5 do not require board approval.

For example, § 11.1, titled "Dissolution," provides: "The Company shall be dissolved and its affairs shall be wound up upon the first to occur of the following: (a) *The consent of Members holding 60% or more of the Percentage Interests*; or (b) The entry of a decree of judicial dissolution under the LLC Act." (Emphasis added.) Section 15.6, titled "Entire Agreement; Amendments," provides in relevant part: "This Agreement . . . constitutes the entire agreement of the parties with respect to the subject matter hereof and *this Agreement may be amended, modified or supplemented only by a written instrument duly executed by the Company and Members holding 60% or more of the Percentage Interests as required by Section 2.5*." (Emphasis added.)

Taking these provisions together, it is apparent that only certain actions taken under § 2.5—i.e., the admission of a new member and the sale of the company— require board approval in addition to member approval. No provision of the agreement requires board approval to amend the agreement or to remove a member.

Having construed § 2.5, we now turn to § 3.4—the provision that the plaintiff alleges the defendants breached. Section 3.4 applies solely to *managers* and, therefore, the defendants could not have breached § 3.4 by amending the agreement and removing the plaintiff because they took those actions in their capacities as *members*, pursuant to § 2.5. We recognize that the parties were both members and managers of CCP, but they had different rights, powers, restrictions, and liabilities depending on whether they were acting in their capacity

as either members or managers. See Del. Code Ann. tit. 6, § 18-403 (2005) ("[a] person who is both a manager and a member has the rights and powers, and is subject to the restrictions and liabilities, of a manager and, except as provided in a limited liability company agreement, also has the rights and powers, and is subject to the restrictions and liabilities, of a member to the extent of the manager's participation in the limited liability company as a member"). Because we determine that the defendants were acting as members, not managers, when they voted to amend the agreement and remove the plaintiff as a member of CCP, we conclude, as a matter of law, that the defendants could not have breached § 3.4, applicable to managers, in doing so.

For the foregoing reasons, we conclude that the court improperly construed the agreement and erred by denying the defendants' posttrial motions. In other words, the jury could not legally have concluded that the defendants breached § 3.4 in amending the agreement and removing the plaintiff as a member because they were not bound by that section in taking those actions. Accordingly, we reverse the judgment with respect to the breach of contract counts regarding the amendment to the agreement and the plaintiff's removal as a member, and remand the case with direction to render judgment in favor of the defendants.[19]

B

Capital Reserve

The defendants claim that the trial court improperly instructed the jury on the meaning of § 3.4, which affected the jury's verdict on the capital reserve claim. We agree that the court misconstrued § 3.4 and improperly instructed the jury; however, we conclude that any such error was harmless.

We begin with the well settled standard of review of claimed instructional errors. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Burke* v. *Mesniaeff*, 334 Conn. 100, 116, 220 A.3d 777 (2019). "Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 625,

760 A.2d 969 (2000).

At trial, the court instructed the jury that § 3.4 required the managers to exercise their best judgment in performing the company's operations and their other duties under the agreement, and prohibited them from taking actions that were done in bad faith, or with gross negligence or willful misconduct. Specifically, the court instructed: "In this case, the plaintiff claims that the defendants breached [§] 3.4, the duty of care provision of the LLC agreement on three occasions. Section 3.4 requires the managers of CCP to exercise their best judgment in conducting the company's operations and in performing their other duties under the LLC agreement and prohibits actions that are taken in bad faith or with gross negligence or wilful misconduct. Bad faith is synonymous with the absence of good faith which in turn means honesty . . . and the observance of reasonable standards of fair dealings. A determination will be considered to be in good faith unless it went so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith. Wilful misconduct means intentional wrongdoing, not mere negligence, gross negligence or recklessness. And wrongdoing means malicious conduct or conduct designed to defraud or seek an unconscionable advantage. Gross negligence means conduct that constitutes reckless indifference or actions that are without the bounds of reason. . . .

"[T]he plaintiff claims that the defendants . . . breached the duty of care provision by maintaining a $3 million capital reserve for CCP, which reduced by $750,000 the amount that [the plaintiff] was paid upon his removal. [The plaintiff] claims there was no good faith basis for a $3 million capital reserve at the time of his removal and that the defendants maintained the $3 million capital reserve at that time for the bad faith purpose of depriving [the plaintiff] of money. . . .

"The defendants do not dispute that they maintained the $3 million capital reserve, but they deny they did so in bad faith or in breach of the LLC agreement . . . .

"The defendants deny that they acted in bad faith, committed gross negligence or wilful misconduct. And they allege that they believe their action[s] to be in CCP's best interest or not opposed to them. They also contend that their actions were authorized by the sections of the agreement which permitted amendment of the LLC agreement, removal of members, and retention of the capital reserve."

On appeal, it is undisputed that the defendants maintained the capital reserve in their capacity as managers[20] and that the first sentence of § 3.4 establishes an express duty that the managers "exercise their best judgment in conducting the Company's operations and in performing their other duties hereunder." The defen-

dants, however, claim that the trial court improperly construed the second sentence of § 3.4 as imposing affirmative contractual duties upon the managers to act in good faith, and without gross negligence or wilful misconduct. Instead, the defendants argue, the second sentence of § 3.4 is an exculpatory clause that serves to immunize individuals from liability in certain circumstances. The plaintiff counters that § 3.4 contains explicit requirements that the managers act in good faith and that their actions not constitute gross negligence or wilful misconduct. We agree with the defendants.

We believe that the meaning of § 3.4 is clear and unambiguous. The first sentence of § 3.4 sets forth a clear duty of the managers to exercise their "best judgment" when performing the company's operations. The second sentence, however, provides that a manager will not be liable to the company, as long as the manager acted in good faith, and such action did not amount to gross negligence or wilful misconduct. This second sentence does not contain an express duty, as the trial court so concluded. Rather, it provides circumstances in which a manager would not be protected from liability to the company. Our reading is supported by § 2.3, titled "Limitation of Liability," which states in part: "No Member shall be liable under a judgment, decree or order of any court, or in any other manner, for a debt, obligation or liability of the Company, except as provided by law or as otherwise specifically provided herein." Section 3.4 "specifically provide[s]" the circumstances in which a manager shall be liable to or for the company. These provisions taken together mean that a manager will not be liable to the company, unless he or she acts in bad faith or with gross negligence or wilful misconduct.

Our interpretation of this provision is consistent with Delaware case law interpreting similar provisions in limited liability company operating agreements. For example, in *Fisk Ventures, LLC* v. *Segal*, Docket No. 3017-CC, 2008 WL 1961156 (Del. Ch. May 7, 2008), aff'd, 984 A.2d 124 (Del. 2009), the Chancery Court of Delaware addressed a contractual provision similar to the one at issue in the present case: " 'No Member shall have any duty to any Member of the Company except as expressly set forth herein or in other written agreements. No Member, Representative, or Officer of the Company shall be liable to the Company or to any Member for any loss or damage sustained by the Company or to any Member, unless the loss or damage shall have been the result of gross negligence, fraud or intentional misconduct by the Member, Representative, or Officer in question. . . .' " Id., *9. The counterclaim and third-party plaintiff in that case, Andrew Segal, argued that the provision established a " 'duty to act without gross negligence, fraud or intentional misconduct.' " Id. The court stated that, "[u]nder Segal's read-

ing, a . . . member would be liable to the [c]ompany or other members for *any* damage caused by gross negligence, [wilful] misconduct, or a knowing violation of law. There is no guidance as to how or when this 'code of conduct' applies, and this [c]ourt declines to follow Segal's invitation to turn an expressly exculpatory provision into an all encompassing and seemingly boundless standard of conduct." (Emphasis in original.) Id. Accordingly, the court in *Fisk* concluded that the provision at issue did not create an express duty to act in a certain way; instead, it exculpated members from liability for a loss unless the loss was caused by that member's gross negligence, fraud, or intentional misconduct. Although not bearing on our resolution of the claim in this appeal, we find the analysis by the court in *Fisk* persuasive.

The trial court erred, therefore, when it instructed the jury that "[§] 3.4 requires the managers of CCP to exercise their best judgment in conducting the company's operations and in performing their other duties under the LLC agreement *and prohibits actions that are taken in bad faith or with gross negligence or wilful misconduct.*" (Emphasis added.) We determine, however, that this instruction, premised upon an improper interpretation of § 3.4, constituted harmless error. A party is entitled to a new trial for an instructional error only if the error likely affected the verdict. See *Perez* v. *Cumba*, 138 Conn. App. 351, 378–79, 51 A.3d 1156 ("[B]efore a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict."), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012). The trial court's instruction to the jury was harmless because if the jury found that the defendants breached § 3.4 of the agreement because they acted in bad faith or their actions constituted gross negligence or wilful misconduct, then any of those actions would certainly not have been in their "best judgment" in conducting the company's operations.

We conclude that the court erred in instructing the jury that the defendants owed the duty under the agreement to act in good faith and without wilful misconduct or gross negligence; however, this error was harmless. Accordingly, we affirm the judgment with respect to the breach of contract claim regarding the maintenance of the capital reserve.

## II

The defendants also claim that the trial court improperly awarded attorney's fees and costs to the plaintiff pursuant to § 15.7 of the agreement, which provides for such relief to a party damaged by a breach of the agreement. See footnote 14 of this opinion. They argue that because the agreement and the evidence do not support the notion that the defendants breached an

obligation under the agreement, the award cannot stand. Because we affirm the judgment in favor of the plaintiff on the breach of contract count related to the capital reserve, an award of attorney's fees and costs is appropriate in accordance with § 15.7. We reverse the judgment in part and remand the matter for a new hearing as to attorney's fees and costs, however, in light of the "results obtained" by the plaintiff following this appeal—that is, the reversal of two breach of contract counts. See *Mahani* v. *Edix Media Group, Inc.*, 935 A.2d 242, 245–46 (Del. 2007) ("[t]o assess a fee's reasonableness, case law directs a judge to consider the factors set forth in the Delaware Lawyers' Rules of Professional Conduct, which, include . . . (4) the amount involved and the results obtained . . . ." (footnote omitted)).

The judgment is reversed with respect to the counts alleging breach of contract related to amendment and member removal and the case is remanded with direction to render judgment on those counts for the defendants and for a new hearing on the plaintiff's motion for attorney's fees and costs; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We resolve the defendants' appeals by concluding that the court improperly denied the defendants' posttrial motions and improperly charged the jury. Accordingly, we need not reach the defendants' claims regarding the trial court's rulings on their other motions.

[2] The agreement provides that "[t]he Board of Managers shall act and serve as the manager of the Company and shall be the 'manager' of the Company as defined under Section 18-101 (10) of the [act]. Subject to the provisions of this Agreement, the management, policies and control of the Company shall be vested exclusively in the Board of Managers."

[3] The agreement provides that "[s]ubject to the control of the Board of Managers, the Managing Partner shall have general charge and control of the business and affairs of the Company, including, without limitation, setting the agenda for meetings of the Board of Managers, preparing compensation schedules and budgets and generally determining the Company's business priorities and the manner in which they will be implemented."

[4] On August 11, 2005, the managers were the parties and Kavanagh.

[5] The amendment pertained to section 8.1 of the agreement:

"[*Original*] *Language*:

**8.1 General Distributions.** Subject to applicable law and except as otherwise provided in Section 8.5, the Company shall make distributions to the Members at such times and in such aggregate amounts as may be determined by the Board of Managers, in its sole discretion. Each such distribution shall be made *pro rata* among the Members in proportion to their relative Capital Accounts as of the date of the applicable distribution.

"[*Amended*] *Language:*

**8.1 General Distributions.** Subject to applicable law and except as otherwise provided in Section 8.5, the Company shall make distributions to the Members at such times and in such aggregate amounts as may be determined by the Board of Managers, in its sole discretion. Each such distribution shall be made *pro rata* among the Members in proportion to their relative Capital Accounts as of the date of the applicable distribution, *unless otherwise determined and agreed by all of the Members and subject to the remainder of this Section VIII.*" (Emphasis in original.)

[6] Section 2.5 of the agreement, titled "Actions Requiring Member Approval," provides in relevant part: "In addition to the other matters specified hereunder, subject to the prior approval by the Board of Managers, the consent of Members holding 60% or more of the Percentage Interests shall be required for . . . (vii) any amendment to this Agreement." "Percentage Interests" is defined in the agreement by reference to § 5.2, which states: "Each Member shall have a certain percentage interest for purposes of apportioning certain allocations and distributions (a 'Percentage Interest')

as indicated on his Economic Exhibit attached as <u>Schedule B</u> hereto. Each Member's Economic Exhibit shall be automatically amended without the consent of any Member from time to time to reflect any changes in the Percentage Interest of such Member made in accordance with the terms of this Agreement. The sum of all Percentage Interests shall be equal at all times to 100%. Subject to Section 2.5, each Member's Percentage Interest may be increased or reduced prospectively, without such Member's consent, from time to time by the Board of Managers."

[7] See footnote 6 of this opinion.

[8] The plaintiff alleged that the 2008 amendment had the effect of reducing the percentage of his and Kavanagh's interests in the company and their capital accounts, while increasing the comparable interests and capital accounts of the defendants. The plaintiff also alleges that the 2008 amendment was "part of a pattern and practice of behavior on the part of [the defendants] of operating CCP in bad faith so as to advantage themselves at the expense of [the plaintiff] and Kavanagh and violating [the plaintiff's] rights as a minority member of CCP."

[9] By maintaining a capital reserve of $3 million, the plaintiff claims that the defendants effectively reduced the amount he received when CCP repurchased his interest upon his removal as a member.

[10] Section 3.4 of the agreement provides in relevant part: "The Managers shall exercise their best judgment in conducting the Company's operations and in performing their other duties hereunder. The Managers shall not incur any liability to the Company, any Member . . . which arises out of any action or omission of the Managers . . . <u>provided,</u> <u>however</u> that (i) the Managers . . . acted in good faith and in a manner such Person reasonably believed to be in, or not opposed to, the best interests of the Company and, with respect to any criminal action or proceeding, had no reasonable cause to believe such Person's conduct was unlawful, and (ii) such course of conduct did not constitute gross negligence or willful misconduct of the Managers . . . . The Managers . . . shall be fully protected and justified with respect to any action or omission taken or suffered by any of them in good faith if such action or omission is taken or suffered in reliance upon and in accordance with the opinion or advice as to matters of law of legal counsel, or as to matters of accounting of accountants, selected by any of them with reasonable care. In addition, the Managers . . . shall be entitled to indemnification by the Company to the extent provided in Article XIV hereof." (Emphasis in original.)

[11] See Practice Book § 10-39 (a) ("[a] motion to strike shall be used whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint").

[12] The jury verdict form stated:

"**2008 Amendments**

"1. On the plaintiff's breach of contract claim concerning the 2008 amendments to the LLC Agreement, we, the jury, find in favor of:

"Plaintiff

"Defendants

"*If you have found in favor of the Plaintiff on Question 1, proceed to Question 2. If you have found in favor of the Defendants on Question 1, skip Question 2 and proceed to Question 3.*

"2. If you have found in favor of the Plaintiff on Question 1, what amount of damages do you award to [the] Plaintiff on his breach of contract claim concerning the 2008 amendments?

"$

"**$3 Million Capital Reserve**

3. On the Plaintiff's breach of contract claim concerning the $3 million capital reserve, we, the jury, find in favor of:

"Plaintiff

"Defendants

"*If you have found in favor of the Plaintiff on Question 3, skip Question 4 and proceed to Question 5.*

"*If you have found in favor of the Defendants on Question 3, proceed to Question 4.*

"4. On the Plaintiff's breach of fiduciary duty claim concerning the $3 million capital reserve, we, the jury, find in favor of:

"Plaintiff

"Defendants

"*If you have found in favor of the Plaintiff on Question 4, proceed to Question 5.*

"*If you have found in favor of the Defendants on Questions 3 and 4,*

*skip Question 5 and proceed to Question 6.*

"5. If you have found in favor of the Plaintiff on Question 3 or Question 4, what amount of damages do you award to [the] Plaintiff on his claim concerning the $3 million capital reserve?

"$

"**Removal from CCP**

"6. On the Plaintiff's breach of contract claim concerning his removal from CCP, we, the jury, find in favor of:

"Plaintiff

"Defendants

"*If you have found in favor of the Plaintiff on Question 6, skip Question 7 and proceed to Question 8.*

"*If you have found in favor of the Defendants on Question 6, proceed to Question 7.*

"7. On the Plaintiff's breach of fiduciary duty claim concerning his removal from CCP, we, the jury, find in favor of:

"Plaintiff

"Defendants

"*If you have found in favor of the Plaintiff on Question 7, proceed to Question 8.*

"*If you have found in favor of the Defendants on Questions 6 and 7, skip Question 8.*

"8. If you have found in favor of the Plaintiff on Question 6 or Question 7, what amount of damages do you award to [the] Plaintiff on his claim concerning his removal from CCP?

"$

"*If you awarded damages to the Plaintiff in Questions 2, 5, and/or 8, proceed to Question 9.*

"*If you have not awarded damages to the Plaintiff in Questions 2, 5, or 8, skip Question 9 and have your foreperson sign and date this form where indicated below.*

"**Total Damages**

"9. If you have rendered a verdict for the Plaintiff on one or more of the above claims, insert the total amount awarded below.

"$          "

[13] The plaintiff withdrew the breach of fiduciary duty claim related to the amendment to the agreement because the defendants were going to file a motion arguing that the claim was barred by the statute of limitations and, the plaintiff's counsel reasoned: "[I]t's an issue that's largely covered by our breach of contract claim that it is going to make the jury deliberations and verdict form and jury interrogatories unduly confusing."

[14] Section 15.7 of the agreement provides in part: "In the event of a breach by any party to this Agreement of its obligations under this Agreement, any party injured by such breach, in addition to being entitled to exercise all rights granted by law, including recovery of damages and costs (including reasonable [attorney's] fees), will be entitled to specific performance of its rights under this Agreement."

[15] The parties agree that Delaware substantive law governs this claim because the choice of law provision—§ 15.5 of the agreement—provides: "This Agreement shall be construed in accordance with the laws of the [s]tate of Delaware, without giving effect to the principles of conflicts of law thereof that would cause the application of the laws of any jurisdiction other than the [s]tate of Delaware."

[16] For the reasons set forth in this part of the opinion, we address the claims regarding the amendment to the operating agreement and the plaintiff's removal as a member together.

[17] Following oral argument before this court, we ordered the parties to file simultaneous supplemental briefs, addressing the following question: "Whether the defendants were bound by, and therefore could have breached, [§] 3.4 of the operating agreement, a section applicable to *managers*, when they amended the operating agreement and removed the plaintiff as a member pursuant to [§] 2.5 of the operating agreement, a section that authorized them to take certain actions as *members*."

In addressing this question, the plaintiff relied extensively on extrinsic evidence, namely testimony at trial, to support his interpretation of the agreement. We decline the plaintiff's invitation to consider this evidence because it is irrelevant in the face of clear and unambiguous language in the agreement.

[18] Section 3.1, titled "Management and Control of the Company," states that the language "the Board of Managers may," found in § 5.5 and elsewhere

in the agreement, requires majority consent by the board. Section 3.1 (g) (i) provides: "all decisions or actions which this Agreement provides *may be made by* 'the Managers' or *the 'Board of Managers'*, may be made with the consent of a majority of the entire Board of Managers voting in proportion to their Percentage Interests  .  .  .  ." (Emphasis added.)

[19] The plaintiff argues that, if this court reverses a breach of contract count, we should remand the case with instructions to render judgment for the plaintiff on the related breach of fiduciary duty claim. In support of this argument, the plaintiff quotes the trial court's statement in its memorandum of decision on the motion for attorney's fees and costs: "The jury was not required to reach the plaintiff's breach of fiduciary duty claim since it found in his favor as to breach of contract and awarded the full amount of damages sought. There was a substantial identity of the facts required to prove the breach of contract and breach of fiduciary duty claims, which may not be readily separated." We decline to remand the case with direction to render judgment on the related breach of fiduciary duty claim because the plaintiff did not take an exception to the jury verdict form that instructed the jury to bypass consideration of the breach of fiduciary duty counts related to the plaintiff's removal as a member and the maintenance of the capital reserve and, therefore, the plaintiff failed to preserve the claim. See *McMahon* v. *Middletown*, 181 Conn. App. 68, 76, 186 A.3d 58 (2018) ("[i]t is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level" (internal quotation marks omitted)). Breach of contract and breach of fiduciary duty are distinct theories of liability and nothing prevented the plaintiff from prevailing under both theories, if successful. See *Connelly* v. *State Farm Mutual Automobile Ins. Co.*, supra, 135 A.3d 1279 n.28 (elements of breach of contract are "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting damage to the plaintiff" (internal quotation marks omitted)); contra *Chioffi* v. *Martin*, 181 Conn. App. 111, 138, 186 A.3d 15 (2018) (elements of breach of fiduciary duty are "[1] [t]hat a fiduciary relationship existed which gave rise to  .  .  . a duty of loyalty  .  .  . an obligation  .  .  . to act in the best interests of the plaintiff, and  .  .  . an obligation  .  .  . to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty" (internal quotation marks omitted)); *Estate of Eller* v. *Barton*, 31 A.3d 895, 897 (Del. 2011) ("[t]o establish liability for the breach of a fiduciary duty, a plaintiff must demonstrate that the defendant owed her a fiduciary duty and that the defendant breached it").

[20] Section 3.2 of the agreement, which details the powers of managers, provides in relevant part: "(a) Subject to the provisions of this Agreement, the powers delegated to the Executive Committee and the Investment Committee and the rules and procedures adopted from time to time by the Board of Managers, any Manager shall have the power on behalf and in the name of the Company to carry out and implement any and all of the purposes of the Company and to exercise any of the powers of the Company, including, without limitation, the power to  .  .  . (xiii) establish from time to time a capital reserve for future expenses of the Company."